IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| RICHARD DAVIS, JR., )<br>    Plaintiff, )<br> )<br>v. )<br> )<br>NANCY A. BERRYHILL, )<br>Acting Commissioner of )<br>Social Security, )<br>    Defendant. ) | CIVIL ACTION NO. 17-CV-293-N |

## MEMORANDUM OPINION AND ORDER

Plaintiff Richard Davis Jr. ("Davis") brought this action under 42 U.S.C. §§ 405(g) and 1383(c)(3) seeking judicial review of a final decision of the Defendant Commissioner of Social Security ("the Commissioner") denying his applications for a period of disability and disability insurance benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. § 401, *et seq*. Upon consideration of the parties' briefs (Docs. 9, 12) and those portions of the administrative record (Doc. 8) (hereinafter cited as "(Tr. [page number(s) in lower-right corner of transcript])") relevant to the issues raised, the Court finds that the Commissioner's final decision is due to be **AFFIRMED** under sentence four of § 405(g).[1]

I. **Background**

On April 17, 2017, Davis filed a Title II application for a period of disability

---

[1] With the consent of the parties, the Court has designated the undersigned Magistrate Judge to conduct all proceedings and order the entry of judgment in this civil action, in accordance with 28 U.S.C. § 636(c), Federal Rule of Civil Procedure 73, and S.D. Ala. GenLR 73. (*See* Docs. 16, 17). Additionally, the parties elected to waive oral argument. (*See* Docs. 15 ,18).

and disability insurance benefits ("DIB"), with the Social Security Administration ("SSA"), alleging disability beginning March 2, 2014.[2] (Tr. 258-262). After his application was initially denied, Davis requested a hearing before an Administrative Law Judge ("ALJ") with the SSA's Office of Disability Adjudication and Review. A hearing was held October 29, 2015, and on August 11, 2016, the ALJ issued an unfavorable decision on Davis' application, finding: "Based on the application for a period of disability and [DIB] protectively filed on April 17, 2014, [Davis] is not disabled under sections 216(i) and 223(d) of the Social Security Act." (Tr. 36).

On July 26, 2017, the Commissioner's decision on Davis' application became final when the Appeals Council for the Office of Disability Adjudication and Review denied Davis' request for review of the ALJ's decision. (Tr. 17-42). Davis subsequently filed this action under § 405(g) for judicial review of the Commissioner's final decision. (*See* Doc. 1); 42 U.S.C. § 1383(c)(3) ("The final determination of the Commissioner of Social Security after a hearing [for SSI benefits] shall be subject to judicial review as provided in section 405(g) of this title to the same extent as the Commissioner's final determinations under section 405 of this title."); 42 U.S.C. § 405(g) ("Any individual, after any final decision of the Commissioner of Social Security made after a hearing to which he was a party, irrespective of the amount in controversy, may obtain a review of such decision by a civil action commenced within sixty days after the mailing to him of notice of such decision or within such further

---

[2] "For DIB claims, a claimant is eligible for benefits where she demonstrates disability on or before the last date for which she were insured. 42 U.S.C. § 423(a)(1)(A) (2005). For SSI claims, a claimant becomes eligible in the first month where she is both disabled and has an SSI application on file. 20 C.F.R. § 416.202–03 (2005)." *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005) (per curiam).

2

time as the Commissioner of Social Security may allow."); *Ingram v. Comm'r of Soc. Sec. Admin.*, 496 F.3d 1253, 1262 (11th Cir. 2007) ("The settled law of this Circuit is that a court may review, under sentence four of section 405(g), a denial of review by the Appeals Council.").

## II. Standard of Review

"In Social Security appeals, [the Court] must determine whether the Commissioner's decision is ' "supported by substantial evidence and based on proper legal standards. Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." ' " *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011) (quoting *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004) (per curiam) (internal citation omitted) (quoting *Lewis v. Callahan*, 125 F.3d 1436, 1439 (11th Cir. 1997))). However, the Court " 'may not decide the facts anew, reweigh the evidence, or substitute our judgment for that of the [Commissioner].' " *Id.* (quoting *Phillips v. Barnhart*, 357 F.3d 1232, 1240 n.8 (11th Cir. 2004) (alteration in original) (quoting *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983))). "'Even if the evidence preponderates against the [Commissioner]'s factual findings, [the Court] must affirm if the decision reached is supported by substantial evidence.' " *Ingram*, 496 F.3d at 1260 (quoting *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990)).

"Yet, within this narrowly circumscribed role, [courts] do not act as automatons. [The Court] must scrutinize the record as a whole to determine if the decision reached is reasonable and supported by substantial evidence[.]"

3

*Bloodsworth*, 703 F.2d at 1239 (citations and quotation omitted). *See also Owens v. Heckler*, 748 F.2d 1511, 1516 (11th Cir. 1984) (per curiam) ("We are neither to conduct a de novo proceeding, nor to rubber stamp the administrative decisions that come before us. Rather, our function is to ensure that the decision was based on a reasonable and consistently applied standard, and was carefully considered in light of all the relevant facts.").[3] "In determining whether substantial evidence exists, [a court] must…tak[e] into account evidence favorable as well as unfavorable to the [Commissioner's] decision." *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986).

However, the "substantial evidence" "standard of review applies only to findings of fact. No similar presumption of validity attaches to the [Commissioner]'s conclusions of law, including determination of the proper standards to be applied in reviewing claims." *MacGregor v. Bowen,* 786 F.2d 1050, 1053 (11th Cir. 1986) (quotation omitted). *Accord, e.g., Wiggins v. Schweiker*, 679 F.2d 1387, 1389 (11th Cir. 1982) ("Our standard of review for appeals from the administrative denials of

---

[3] Nevertheless, " '[t]here is no burden upon the district court to distill every potential argument that could be made based on the materials before it…' " *Solutia, Inc. v. McWane, Inc.*, 672 F.3d 1230, 1239 (11th Cir. 2012) (per curiam) (quoting *Resolution Trust Corp. v. Dunmar Corp.*, 43 F.3d 587, 599 (11th Cir. 1995) (en banc)) (ellipsis added). Generally, claims of error not raised in the district court are deemed waived. *See Stewart v. Dep't of Health & Human Servs.*, 26 F.3d 115, 115 – 16 (11th Cir. 1994) ("As a general principle, [the court of appeals] will not address an argument that has not been raised in the district court…Because Stewart did not present any of his assertions in the district court, we decline to consider them on appeal." (applying rule in appeal of judicial review under 42 U.S.C. §§ 405(g), 1383(c)(3)); *Hunter v. Comm'r of Soc. Sec.*, 651 F. App'x 958, 962 (11th Cir. 2016) (per curiam) (unpublished) (same); *Cooley v. Comm'r of Soc. Sec.*, 671 F. App'x 767, 769 (11th Cir. 2016) (per curiam) (unpublished) ("As a general rule, we do not consider arguments that have not been fairly presented to a respective agency or to the district court. *See Kelley v. Apfel*, 185 F.3d 1211, 1215 (11th Cir. 1999) (treating as waived a challenge to the administrative law judge's reliance on the testimony of a vocational expert that was 'not raise[d] . . . before the administrative agency or the district court')."); *In re Pan Am. World Airways, Inc., Maternity Leave Practices & Flight Attendant Weight Program Litig.*, 905 F.2d 1457, 1462 (11th Cir. 1990) ("[I]f a party hopes to preserve a claim, argument, theory, or defense for appeal, she must first clearly present it to the district court, that is, in such a way as to afford the district court an opportunity to recognize and rule on it."); *Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999) (applying *In re Pan American World Airways* in Social Security appeal).

Social Security benefits dictates that '(t)he findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive ....' 42 U.S.C.A. s 405(g) … As is plain from the statutory language, this deferential standard of review is applicable only to findings of fact made by the Secretary, and it is well established that no similar presumption of validity attaches to the Secretary's conclusions of law, including determination of the proper standards to be applied in reviewing claims." (some quotation marks omitted)). This Court "conduct[s] 'an exacting examination' of these factors." *Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996) (per curiam) (quoting *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990)). "'The [Commissioner]'s failure to apply the correct law or to provide the reviewing court with sufficient reasoning for determining that the proper legal analysis has been conducted mandates reversal.'" *Ingram*, 496 F.3d at 1260 (quoting *Cornelius v. Sullivan*, 936 F.2d 1143, 1145-46 (11th Cir. 1991)). *Accord Keeton v. Dep't of Health & Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994).

In sum, courts "review the Commissioner's factual findings with deference and the Commissioner's legal conclusions with close scrutiny." *Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001). *See also Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005) (per curiam) ("In Social Security appeals, we review *de novo* the legal principles upon which the Commissioner's decision is based. *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986). However, we review the resulting decision only to determine whether it is supported by substantial evidence. *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158–59 (11th Cir. 2004).").

> Eligibility for DIB and SSI requires that the claimant be disabled. 42 U.S.C. §§ 423(a)(1)(E), 1382(a)(1)-(2). A claimant is disabled if she is unable "to engage in any substantial gainful activity by reason of a medically determinable physical or mental impairment ... which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).

*Thornton v. Comm'r, Soc. Sec. Admin.*, 597 F. App'x 604, 609 (11th Cir. 2015) (per curiam) (unpublished).[4]

> The Social Security Regulations outline a five-step, sequential evaluation process used to determine whether a claimant is disabled: (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment or combination of impairments; (3) whether the impairment meets or equals the severity of the specified impairments in the Listing of Impairments; (4) based on a residual functional capacity ("RFC") assessment, whether the claimant can perform any of his or her past relevant work despite the impairment; and (5) whether there are significant numbers of jobs in the national economy that the claimant can perform given the claimant's RFC, age, education, and work experience.

*Winschel*, 631 F.3d at 1178 (citing 20 C.F.R. §§ 404.1520(a)(4)(i)-(v), 416.920(a)(4)(i)-(v); *Phillips*, 357 F.3d at 1237-39).[5]

"These regulations place a very heavy burden on the claimant to demonstrate both a qualifying disability and an inability to perform past relevant work." *Moore*, 405 F.3d at 1211 (citing *Spencer v. Heckler*, 765 F.2d 1090, 1093 (11th Cir. 1985)). "In determining whether the claimant has satisfied this initial burden, the examiner must consider four factors: (1) objective medical facts or clinical findings; (2) the

---

[4] In this Circuit, "[u]npublished opinions are not considered binding precedent, but they may be cited as persuasive authority." 11th Cir. R. 36-2. *See also Henry v. Comm'r of Soc. Sec.*, 802 F.3d 1264, 1267 n.1 (11th Cir. 2015) (per curiam) ("Cases printed in the Federal Appendix are cited as persuasive authority.").

[5] The Court will hereinafter use "Step One," "Step Two," etc. when referencing individual steps of this five-step sequential evaluation.

6

diagnoses of examining physicians; (3) evidence of pain; and (4) the claimant's age, education, and work history." *Jones v. Bowen*, 810 F.2d 1001, 1005 (11th Cir. 1986) (per curiam) (citing *Tieniber v. Heckler*, 720 F.2d 1251, 1253 (11th Cir. 1983) (per curiam)). "These factors must be considered both singly and in combination. Presence or absence of a single factor is not, in itself, conclusive." *Bloodsworth*, 703 F.2d at 1240 (citations omitted).

If, in Steps One through Four of the five-step evaluation, a claimant proves that he or she has a qualifying disability and cannot do his or her past relevant work, it then becomes the Commissioner's burden, at Step Five, to prove that the claimant is capable—given his or her age, education, and work history—of engaging in another kind of substantial gainful employment that exists in the national economy. *Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999); *Sryock v. Heckler*, 764 F.2d 834, 836 (11th Cir. 1985). Finally, although the "claimant bears the burden of demonstrating the inability to return to [his or] her past relevant work, the Commissioner of Social Security has an obligation to develop a full and fair record." *Shnorr v. Bowen*, 816 F.2d 578, 581 (11th Cir. 1987). *See also Ellison v. Barnhart*, 355 F.3d 1272, 1276 (11th Cir. 2003) (per curiam) ("It is well-established that the ALJ has a basic duty to develop a full and fair record. Nevertheless, the claimant bears the burden of proving that he is disabled, and, consequently, he is responsible for producing evidence in support of his claim." (citations omitted)). "This is an onerous task, as the ALJ must scrupulously and conscientiously probe into, inquire of, and explore for all relevant facts. In determining whether a claimant is disabled, the ALJ must consider the

evidence as a whole." *Henry v. Comm'r of Soc. Sec.*, 802 F.3d 1264, 1267 (11th Cir. 2015) (per curiam) (citation and quotation omitted).

Where, as here, the ALJ denied benefits and the Appeals Council denied review of that decision, the Court "review[s] the ALJ's decision as the Commissioner's final decision." *Doughty*, 245 F.3d at 1278. "[W]hen the [Appeals Council] has denied review, [the Court] will look only to the evidence actually presented to the ALJ in determining whether the ALJ's decision is supported by substantial evidence." *Falge v. Apfel*, 150 F.3d 1320, 1323 (11th Cir. 1998). If the applicant attacks only the ALJ's decision, the Court may not consider evidence that was presented to the Appeals Council but not to the ALJ. *See id.* at 1324.

## III. Analysis

At Step One, the ALJ determined that Davis met the applicable insured status requirements through December 31, 2015[6], and that he had not engaged in substantial gainful activity since the alleged disability onset date of March 2, 2014. (Tr. 22). At Step Two, the ALJ determined that Davis had the following severe impairments: osteoarthritis of the left knee, obesity, diabetes mellitus, status post mitral valve repair, chronic obstructive pulmonary disease ("COPD"), specific learning disorders (provisional); and borderline intellectual functioning versus low average intellectual functioning (20 C.F.R. 404.1520(c). (Tr. 22). At Step Three, the ALJ found that Davis did not have an impairment or combination of impairments that met or equaled the severity of one of the specified impairments in the relevant

---

[6] Within the transcript, this date is listed as 2018 rather than 2015. It is clear from the record that 2015 was the date intended.

8

Listing of Impairments. (Tr. 24).

At Step Four,

> the ALJ must assess: (1) the claimant's residual functional capacity ("RFC"); and (2) the claimant's ability to return to her past relevant work. 20 C.F.R. § 404.1520(a)(4)(iv). As for the claimant's RFC, the regulations define RFC as that which an individual is still able to do despite the limitations caused by his or her impairments. 20 C.F.R. § 404.1545(a). Moreover, the ALJ will "assess and make a finding about [the claimant's] residual functional capacity based on all the relevant medical and other evidence" in the case. 20 C.F.R. § 404.1520(e). Furthermore, the RFC determination is used both to determine whether the claimant: (1) can return to her past relevant work under the fourth step; and (2) can adjust to other work under the fifth step…20 C.F.R. § 404.1520(e).
>
> If the claimant can return to her past relevant work, the ALJ will conclude that the claimant is not disabled. 20 C.F.R. § 404.1520(a)(4)(iv) & (f). If the claimant cannot return to her past relevant work, the ALJ moves on to step five.
>
> In determining whether [a claimant] can return to her past relevant work, the ALJ must determine the claimant's RFC using all relevant medical and other evidence in the case. 20 C.F.R. § 404.1520(e). That is, the ALJ must determine if the claimant is limited to a particular work level. *See* 20 C.F.R. § 404.1567. Once the ALJ assesses the claimant's RFC and determines that the claimant cannot return to her prior relevant work, the ALJ moves on to the fifth, and final, step.

*Phillips*, 357 F.3d at 1238-39 (footnote omitted).

The ALJ determined that Davis had the RFC "to perform light work as defined in 20 CFR 404.1567(b) except for the following limitations: the claimant cannot climb ladders, ropes, or scaffolds; He can occasionally climb ramps and stairs. He is capable of occasional kneeling, crouching, and crawling. The claimant cannot work around unprotected heights or hazardous machinery. He can occasionally tolerate exposure to dust, fumes, odors, and gases. He cannot work around loud noise. The claimant

9

cannot perform tasks requiring fine auditory discrimination, but he can hear adequately for normal verbal communication. The claimant is limited to simple routine tasks, with verbal instructions." (Tr. 29).

Based on this RFC, the ALJ determined that Davis was unable to perform any past relevant work as a truck driver, mill wright, insulation installer, or off-road trucker. (Tr. 34). At Step Five, after taking testimony from a vocational expert, the ALJ found that there exist significant numbers of jobs in the national economy that Davis can perform given his RFC, age, education, and work experience. (Tr. 35). Thus, the ALJ found that Davis was not disabled under the Social Security Act. (Tr. 36.).

### a. First Claim of Error (Failure to Find Certain Impairments Were Severe)

Davis argues that the ALJ committed reversible error by failing to find that Davis' hearing loss, obstructive sleep apnea ("OSA"), cardiac dysrhythmias, chronic heart failure, and acute deep venous thrombosis to be severe impairments. (Doc. 9 at 1). Importantly, Davis does not argue that the ALJ's findings were not supported by substantial evidence. Rather, he argues "the medical records support" a finding that the above referenced impairments were severe and that treatment records indicate that the ALJ should have determined that these impairments were severe. (Doc. 9 at 3, 5).

The question before this Court is not whether an alternative determination may be supported by the record, but whether the decision reached was supported by substantial evidence. *See Ingram*, 496 F.3d at 1260. "'Even if the evidence

preponderates against the [Commissioner]'s factual findings, we must affirm if the decision reached is supported by substantial evidence.'" *Ingram*, 496 F.3d at 1260 (quoting *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990)). While the medical records may support an alternative determination, there remains substantial evidence within the record upon which the ALJ's determination was based. Further, the ALJ specifically articulated the rationale behind his determination and as a result, Plaintiff's first assignment of error is without merit.[7]

### b. Second Claim of Error (Availability of Jobs in the National Economy)

Davis' second and final claim of error asserts that the ALJ's Step Five determination that there exist significant numbers of jobs in the national economy that Davis can perform, given his RFC, age, education, and work experience, is not supported by substantial evidence. As Davis summarizes in his brief:

> At the hearing, the Vocational Expert testified that the Plaintiff could perform the requirements of the following jobs: Delivery/Courier, with a 25% reduction in jobs due to the verbal instruction limitation and another 10-15% reduction due to hearing-related limitations; Textile Laundry Folder, with a 10-15% reduction due to hearing-related limitations; and Assembler of Small Productions, with a 25% reduction due to the verbal instruction limitation and another 10-15% due to hearing-related limitations. Tr. at 35. The job numbers given for these jobs nationally were 76,830, 419,840, and 218,740, respectively. Id. The vocational expert testified that she relied on her professional experience and observation in determining the reduced number of jobs due to the hearing-related limitations and need for verbal instructions in the residual functional capacity, but otherwise her testimony was consistent with the DOT. Tr. at 104.

---

[7] For more discussion, *see* Defendant's Brief (Doc. 12 at 5-7)(providing specific examples of substantial evidence supporting the ALJ's determination that these impairments were not severe).

> However, using the program Job Browser Pro by SkillTRAN[8], the DOT code for Delivery/Courier and the number of jobs given were for the OES group, which consists of 7 unique DOT codes. Total employment for the OES group is 74,060 nationally, 1,340 in Alabama, and 110 in the region. When those numbers are reduced by 40%, it becomes 44,436 nationally, 804 in Alabama, and 66 in the region. However, these numbers include the whole OES group. The employment numbers for this specific DOT code are 27,558 nationally, 499 in Alabama, and 41 in the region, before the 40% reduction. This job does not exist in the significant numbers quoted by the vocational expert and with the reduction in numbers ***due to the vocational expert using an OES group***; this job does not exist in significant numbers once the reduction is in place.

(Doc. 9 at 7, footnote omitted, emphasis added).

Defendant responds indicating that "Plaintiff contends that the ALJ's step five determination is not supported by substantial evidence because the vocational expert's testimony on which the ALJ relied is contradicted by data from [SkillTran]." (Doc. 12 at 12, ¶B). Davis' claim is a bit more complex. Davis argues that the numbers of available jobs provided by the vocational expert were incorrect because the vocational expert did not provide numbers specific to the individual DOT codes for the jobs she testified Davis could perform. Rather, Davis contends that the numbers the vocational expert utilized were for an occupational employment statistics group ("OES group") and included numbers of jobs for several unique DOT codes rather than only the DOT code for each job the vocational expert testified Davis could perform. As a result, Davis argues that the vocational expert's calculations were incorrect because they were based on a larger number than what should have been

---

[8] Davis represents that the "date source for Job Browser Pro … is the U.S. Department of Labor, Dictionary of Occupational Title 4th Edition, Revised (1991), (including subsequent amendments by the U.S. Department of Labor)."  (Doc. 9 at 7 n.2).  Some courts refer to the program as "Job Browser Pro" and others as "SkillTran."

12

used for the calculation. Other than the similarities between the numbers cited by the vocational expert and those Davis cites from SkillTran, there is no evidence that the vocational expert relied upon numbers from an OES group rather than the specific DOT codes. Only speculation and assumption result in this conclusion.

The only testimony regarding the source of the vocation expert's numbers is the following exchange:

> ALJ: And is your testimony consistent with the Dictionary of Occupational Titles?
>
> VE: With the exception of the reduction in numbers and that's based on my experience and familiarity with those types of jobs.

(Tr. at 104).[9] Davis' counsel did not cross examine the vocational expert regarding use of an OES group number rather than individual DOT codes and the undersigned has found no evidence in the record indicating that the vocational expert used numbers from an OES group. The undersigned likens this claim to a claim raised in *Cardone v. Colvin* in the Central District of California. 2014 WL 1516537, at *1 (C.D. Cal. Apr. 18, 2014). In *Cardone*, when presented with a similar claim, that court held:

> First, substantial evidence supports the ALJ's non-disability determination at step five. Plaintiff does not dispute the accuracy of the hypothetical question the ALJ posed to the VE. [*See* JS at 5.] Thus, the VE's testimony in response to the ALJ's complete hypothetical question, without more, was substantial evidence supporting the ALJ's

---

[9] Even assuming that the VE's testimony did not accurately reflect the DOT, binding precedent in this Circuit holds "that when the VE's testimony conflicts with the DOT, the VE's testimony 'trumps' the DOT." *Jones v. Apfel*, 190 F.3d 1224, 1229–30 (11th Cir. 1999). *See also Jones v. Comm'r of Soc. Sec.*, 423 Fed.Appx. at 939 (11th Cir. 2011) (per curiam) (unpublished) ("Even assuming arguendo that the ALJ incorrectly found that the VE's testimony was consistent with the DOT, such error was harmless. *See Diorio v. Heckler*, 721 F.2d 726, 728 (11th Cir. 1983) (applying harmless error analysis to ALJ's incorrect statements that were irrelevant to whether claimant had a severe impairment). In this Circuit, a VE's testimony trumps the DOT to the extent the two are inconsistent. *See Jones*, 190 F.3d at 1229–30.

13

determination that plaintiff was able to perform work that exists in significant numbers in the national economy, and the ALJ was entitled to rely on it. *See* 20 C.F.R. § 416.966(e) ("If the issue in determining whether you are disabled is whether your work skills can be used in other work and the specific occupations in which they can be used, or there is a similarly complex issue, we may use the services of a[VE] or other specialist."); *Bayliss,* 427 F.3d at 1217–18 ("The ALJ's reliance on testimony the VE gave in response to the hypothetical ... was proper."). *See also* Social Security Ruling ("SSR") 83–14,[4] 1983 WL 31254, *4. Further, the VE's testimony amounts to substantial evidence. *Osenbrock v. Apfel,* 240 F.3d 1157, 1163 (9th Cir.2001) (testimony of a VE constitutes substantial evidence). Plaintiff notes that the ALJ "did not inquire how the [VE] derived the numbers of jobs," and asserts that plaintiff's "attorney at the hearing wholly abdicated the responsibility to inquire." [*See* JS at 5–6.] But neither the ALJ nor the VE was required to identify the methodology used to determine the jobs plaintiff can perform; rather, the VE's expertise alone was a sufficient foundation. *Bayliss,* 427 F.3d at 1218 ("A VE's recognized expertise provides the necessary foundation for his or her testimony," and thus, "no additional foundation is required").

Second, plaintiff's lay assessment of the raw vocational data derived from Job Browser Pro [SkillTran] does not undermine the reliability of the VE's opinion, which the ALJ adopted at step five. [AR at 34.] The data presented by plaintiff—while it included some information as to the methodology used to determine the size of each of the Occupational Employment Survey ("OES") Groups [*see, e.g.,* AR at 221–24]—was unaccompanied by any analysis or explanation from a vocational expert or other expert source to put the raw data into context. Moreover, although in determining whether a significant number of jobs exists in the national economy, the Commissioner "take[s] administrative notice of reliable job information available from various governmental and other publications," Job Browser Pro is not among those publications specifically listed by the Commissioner. (*See* 20 C.F.R. § 416.966(d)). Furthermore, while plaintiff identifies several decisions in which courts have acknowledged that a VE's testimony that relies on Job Browser Pro data *may* constitute substantial evidence, none holds that a VE *must* rely on it or that this source controls when it conflicts with the VE's testimony.

Third, even assuming that the data from Job Browser Pro constitutes substantial evidence, the data would only support an alternative finding regarding the number of jobs available for plaintiff in the economy. *See Valenzuela v. Colvin,* 2013 WL 2285232, at *4 (C.D.Cal. May 23, 2013)

14

> ("[A]ssuming *arguendo* that the data from Job Browser Pro constitutes substantial evidence, the data, at best, would support an alternative finding regarding the number of job[s] available for plaintiff in the economy."). The Ninth Circuit has held that "[w]here the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." *Thomas v. Barnhart,* 278 F.3d 947, 954 (9th Cir.2002). Moreover, when the record contains ambiguous or conflicting evidence, the Administration is responsible for resolving the conflict. *See Lewis v. Apfel,* 236 F.3d 503, 509 (9th Cir.2001). As such, the ALJ's decision should be upheld.
>
> Fourth, as plaintiff concedes, plaintiff's counsel at the hearing failed to challenge the VE's job numbers, inquire about the methodology used to derive those numbers, or present competent evidence regarding other jobs data. [*See* JS at 6; AR at 77.] Rather, plaintiff waited until *after* the ALJ's adverse decision to submit alternative job data to the Appeals Council. "Counsel are not supposed to be potted plants at administrative hearings. They have an obligation to take an active role and to raise issues that may impact the ALJ's decision while the hearing is proceeding so that they can be addressed." *Solorzano v. Astrue,* 2012 WL 84527, at *6 (C.D.Cal. Jan.10, 2012) (rejecting plaintiff's contention that "apparent conflicts" existed between the VE's testimony and the Dictionary of Occupational Titles when plaintiff's counsel failed to question the VE at the hearing about any alleged conflicts or request the ALJ do so).

*Cardone v. Colvin*, 2014 WL 1516537, at *5–6 (C.D. Cal. Apr. 18, 2014)(footnotes omitted). Similarly, Davis' counsel did not inquire into the vocational expert's methodology or data source and has presented lay interpretation of SkillTran data, which, if correct, leads only to an alternative conclusion than that reached by the ALJ. Unlike *Cardone,* there is nothing before this court indicating that Davis presented this data to the Appeals Council. While *Cardone* is not controlling authority, the undersigned finds its analysis instructive and agrees with its reasoning.

Additionally, the vocational expert testified that her testimony was consistent with the DOT and that the reduction in numbers was based on her knowledge and expertise. (Tr. at 104). The Court of Appeals for the Eleventh Circuit has held:

> …[T]he Social Security regulations clearly allow that the Commissioner may rely on a VE for her knowledge or expertise. *See* 20 C.F.R. §§ 404.1560(b)(2), 404.1566(e), 416.960(b)(2), 416.966(e); *see also Bayliss v. Barnhart,* 427 F.3d 1211, 1218 (9th Cir.2005) ("A VE's recognized expertise provides the necessary foundation for his or her testimony. Thus, no additional foundation is required.")….The VE's testimony is therefore substantial evidence, as it is relevant evidence that a reasonable person would accept as adequate to support the conclusion that there is work available in significant numbers in the national economy that [the Claimant] is able to perform..

*Curcio v. Comm'r of Soc. Sec.,* 386 F. App'x. 924, 926 (11th Cir. 2010)(internal citation omitted). Accordingly, the undersigned finds that Davis' second claim of error is without merit.

## IV. CONCLUSION

In accordance with the foregoing analysis, it is **ORDERED** that the Commissioner's August 11, 2016 final decision denying Davis' application for a period of disability and DIB is **AFFIRMED** under sentence four of 42 U.S.C. § 405(g). Final judgment shall issue separately in accordance with this Order and Federal Rule of Civil Procedure 58.

**DONE** and **ORDERED** this the **11th** day of **May 2018**.

*/s/ Katherine P. Nelson*
**KATHERINE P. NELSON**
**UNITED STATES MAGISTRATE JUDGE**